UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KUSHAWN S. MILES,

                    Plaintiff,

v.

UNKNOWN J. QUAINTON et al.,

                    Defendants.

_____/

Case No. 1:24-cv-53

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983, 1985, and 1986. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Ahmed. The Court will also dismiss, for failure to state a claim, Plaintiff's § 1985 claims, § 1986 claims, malicious prosecution claims, substantive due process claims, claims for violations of Article I, § 17 of the Michigan Constitution, and all official capacity claims against Defendants Quainton, McLair, and Tillitson. Additionally, the Court will dismiss, for failure to state a claim,

all of Plaintiff's First Amendment retaliation claims under § 1983 against Defendants Quainton, McLair, and Tillitson *except for* Plaintiff's First Amendment retaliation claim for damages against Defendants Quainton, McLair, and Tillitson in their personal capacities, as set forth in paragraphs 20–33 of the complaint based on the protected conduct of refusing to participate in the grievance interview and the adverse actions of threatening to file and then filing an allegedly false misconduct. Further, the Court will also dismiss, for failure to state a claim, any intended claims under 42 U.S.C. § 1983 against Defendant National Union Fire Insurance Company of Pittsburgh, PA (NUFIC), Defendant Michigan Department of Insurance and Financial Services, and Defendant Michigan Department of Technology, Management, and Budget (collectively "the Surety Defendants"). The Court will dismiss without prejudice Plaintiff's state law claims against the Surety Defendants because the Court declines to exercise supplemental jurisdiction over those claims. Plaintiff's First Amendment retaliation claims for damages against Defendants Quainton, McLair, and Tillitson in their personal capacities, as set forth in paragraphs 20–33 of the complaint based on the protected conduct of refusing to participate in the grievance interview and the adverse actions of threatening to file and then filing an allegedly false misconduct, remain in the case.

## Discussion

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues LCF Corrections Officer Unknown Ahmed, LCF Lieutenants J. Quainton and Unknown McLair, LMF Seargeant Unknown Tillitson, NUFIC, Michigan Department of Insurance and Financial Services, and Michigan Department of Technology, Management, and Budget. Plaintiff indicates that the last three entity defendants, i.e., the Surety Defendants, may have played some role as sureties by providing "Employee Dishonesty Bonds" for each of the individual defendants.

2

## I.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## II.     Plaintiff's Retaliation Claim Against Defendant Ahmed

### A.     Factual Allegations

Plaintiff's allegations begin in the early morning hours of August 21, 2023. At that time, Plaintiff was awakened by Defendant Ahmed conducting an "unauthorized and unreasonable shakedown of Plaintiff's area of control on Third Shift without having a valid penological reason and (EXIGENT CIRCUMSTANCES)."[1] (Compl., ECF No. 1, PageID.8.) Plaintiff told Ahmed to get out of Plaintiff's locker and his area of control. Plaintiff informed Ahmed that he was "in violation of MDOC Policy Directives, PD 04.04.110 (SS–XX) Search of Prisoners, Which explicitly states that housing unit officers on each Shift are to conduct at least 2 shakedowns per shift (Except on THIRD SHIFT) and (EXIGENT CIRCUMSTANCES AND APPROVAL OF THE WARDEN or Designee)." (*Id.*)

Plaintiff reports that Ahmed told Plaintiff that Ahmed "did not care what Policy states" and "that he can do what he wants at any time and get away with it." (*Id.*) Ahmed continued to advise Plaintiff that if he continued to complain about Ahmed conducting the shakedown, "he would make up lie[s] and write Plaintiff several misconducts or have his co-workers file false misconducts against [Plaintiff]." (*Id.*) Plaintiff asked to see a supervisor. Plaintiff was told that the only way he would get to speak with a supervisor would be when Plaintiff was reviewed on the false misconducts. (*Id.*) He was also told if he asked again, he would be placed in administrative segregation for a fake threatening behavior. (*Id.*)

---

[1] In this opinion, the Court retains the capitalization and punctuation in quotations from Plaintiff's complaint. Additionally, unless otherwise corrected using brackets, the Court retains the grammar used by Plaintiff when quoting Plaintiff's complaint.

Plaintiff filed a grievance against Ahmed for conducting a shakedown and waking Plaintiff up in violation of policy directive 04.04.110 and 03.03.130(B).[2] (*Id.*) Two days later, as Plaintiff was on his way to the "Control Center" to be interviewed on his grievance, Defendant Ahmed approached Plaintiff. (*Id.* ¶ 19.) Ahmed told Plaintiff that if he "did not Sign-Off" on his grievance that Ahmed would make sure that Plaintiff was subjected to repeated shakedowns, harassment, false misconducts, and retaliation by Ahmed's co-workers and supervisors, including those supervisors that Plaintiff would next visit in the Control Center. (*Id.*) Although Plaintiff includes many additional legal conclusions regarding Ahmed's actions, he alleges no further facts regarding Ahmed after paragraph 19.

## B.    Protected Conduct

These two incidents—the search and the threat in the corridor—are the foundation upon which the rest of Plaintiff's complaint is built. Plaintiff contends that Ahmed's conduct violated Plaintiff's First Amendment rights because Ahmed threatened to retaliate against Plaintiff for his protected conduct, which consisted of Plaintiff threatening to file, then filing, and then continuing to pursue a "non frivolous" administrative grievance.

---

[2] Several MDOC policy directives are referenced in Plaintiff's complaint. The Court takes judicial notice of the versions of those policy directives in effect at the time of the events alleged in Plaintiff's complaint. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (noting that the district court "was entitled to take notice of the full contents of the published articles referenced in the complaint"); *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008) (noting that "a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims"). Specifically, the Court takes judicial notice of MDOC Policy Directive 04.04.110, Search and Arrest in Correctional Facilities (eff. Aug. 7, 2023), MDOC Policy Directive 03.03.130, Humane Treatment and Living Conditions for Prisoners (eff. Apr. 1, 2022), MDOC Policy Directive 03.03.105, Prisoner Discipline (eff. Apr. 18, 2022), MDOC Policy Directive 03.02.130, Prisoner/Parolee Grievances (eff. Mar. 18, 2019), and MDOC Policy Directive 01.04.110, Administrative Rules, Policy, and Procedures (eff. Aug. 15, 2022).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002).

Plaintiff's foundational retaliation claim against Defendant Ahmed fails at the very first step because the grievance Plaintiff threatened to file, and then filed, was patently frivolous. MDOC policy regarding searches in correctional facilities provides "[a] prisoner's possessions, living area, and work area are subject to search at any time, with or without suspicion that contraband is present." MDOC Policy Directive 04.04.110 ¶ W (eff. Aug. 7, 2023). Plaintiff's suggestion that the policy limits the number of searches that Defendant Ahmed could conduct, on third shift or any shift, is utterly baseless. Plaintiff apparently relies on the policy directive provision that specifies the minimum number of searches a housing unit officer MUST conduct—

6

a minimum that does not apply to third shift or that might not apply due to exigent circumstances—as somehow limiting a third shift officer with regard to his or her ability to conduct cell searches.[3]

There is no language in the policy directive that can be reasonably interpreted to support Plaintiff's position. His complaint to Ahmed regarding Ahmed's search of Plaintiff's cell during third shift, therefore, was baseless. Plaintiff's threat to file a grievance and the grievance he filed regarding Ahmed's conduct of the search was frivolous—it lacked an arguable basis in law or in fact. *See, e.g.*, *Nietzke v. Williams*, 490 U.S. 319, 325 (1989) (concluding that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact").

No matter what adverse action befell Plaintiff in response to his complaint, his threat, or his grievance, it did not violate Plaintiff's First Amendment rights because neither the complaint, the threat to file a grievance, nor the grievance were protected conduct. Defendant Ahmed's threats may have been inappropriate, unprofessional, and unwarranted, but they do not violate the First Amendment. Therefore, Plaintiff has failed to state a First Amendment retaliation claim against Defendant Ahmed under § 1983.

### III.   Plaintiff's First Amendment Retaliation Claims against Defendants Quainton, McLair, and Tillotson

#### A.   Factual Allegations

After 11:00 p.m. on August 23, 2023, Plaintiff was called to the LCF Control Center to see Defendants Quainton, McLair, and Tillitson for an interview regarding Plaintiff's grievance

---

[3] MDOC Policy Directive 04.04.110 ¶ X (eff. Aug. 7, 2023) ("Each Corrections Officer assigned to a housing unit shall conduct thorough and complete searches of at least two randomly selected cells/rooms/living areas per shift, except on third shift or due to exigent circumstances (e.g., mobilization) as identified by the Warden or designee.").

against Ahmed.[4] That is where Plaintiff was heading when Ahmed approached and threatened Plaintiff. When Plaintiff arrived at the Control Center, and saw all three of the defendants, he felt "uncomfortable speaking with these Defendants collectively." (Compl., ECF No. 1, PageID.8.) Plaintiff told them he would not participate.

Plaintiff attributes everything that was said and done in the Control Center thereafter to the three defendants collectively:

> 21.    After Plaintiff refused to participate in the grievance interview process, Defendants Quainton, McLair, and Tillitson, became upset, hostile, bel[l]igerent and attempted Intimidating Plaintiff by telling him if he did not participate in the interview process and/ or sign-off on his grievance against Ahmed, that they would collectively come-up with a way to put a Misconduct on Plaintiff and make it stick and have Plaintiff subjected to further mistreatment, shakedowns, false misconducts and come up with other ways to make Plaintiff's life at LCF Miserable and Difficult and anyone else that he associated with.

> 22.    Plaintiff asked Defendants Quainton, McLair and Tillitson, how did they expect Plaintiff or any other inmate to follow the rules and obey their commands when they themselves w[]ere not acting as Role Models, Upholding and Supporting the law through their own actions and personal conduct.

> 23.    Defendants Quainton, McLair and Tillitson, told Plaintiff that they did not care about MDOC Policies and that they make up their own rules at LCF and do what they wanted to and if Plaintiff wanted to stay at LCF and survive then he had better get with their program because they have a way to get rid of trouble making inmates who like to file grievances and lawsuits against their staff.

> 24.    Defendants Quainton, McLair, and Tillitson, collectively told Plaintiff If he ke[pt] on writing grievances and complaints, that they promised him the remaining years of his incarceration at LCF [were] going to be a heartache and miserable for him. That he needed to stop causing trouble for their staff and stop writing grievances and sign off right now or they will make sure Plaintiff stop and the only way they would allow Plaintiff to leave Control Center without a misconduct only

---

[4] MDOC policy requires the grievance coordinator to assign an appropriate respondent. MDOC Policy Directive 03.02.130 ¶ EE (eff. Mar. 18, 2019). Policy also requires the respondent to interview the grievant "to clarify issues of merit, to further an investigation, or otherwise aid in the resolution of the grievance at Step I." *Id*. ¶ GG. An interview is not required if the prisoner "refuses to participate in the interview." *Id*.

if he signed off and promised not to file any more grievances or complaints against their staff.

25.     Plaintiff continued to be subjected to threats of retaliation, harassment and threats of violence in retaliation for filing Non Frivolous Grievances about mistreatment and unsatisfactory prison conditions and egregious abuse of authority by LCF staff.

26.     Plaintiff felt uncomfortable and felt like Defendants Quainton, McLair and Tillitson continued to bate [sic] and provoke him into saying something or respond in order to justify either writing him a false misconduct or placing him in administrative segregation, so Plaintiff left Control Center and went back to his housing unit and went back to sleep because according to PD 03.02.130 Prisoner Grievance Policy, Plaintiff was not under any obligation to participate in the grievance interview process. Defendants Quainton, McLair and Tillitson told Plaintiff that he would be sorry and regret he did not sign-off or participate in the interview process.

(*Id*., PageID.9.)[5]

The next day, Plaintiff was called back to the Control Center by Defendant Tillitson to be reviewed on an "Out of Place" misconduct written by Quainton.[6] The misconduct report read as follows:

On 8/23/23 prisoner Miles #237011 was called out to Control Center for a Grievance Interview. Prisoner Miles "Reported" and left the Control Center

---

[5] The Court does not typically accept such collective allegations as supportive of a reasonable inference that any one of the Defendants took such action. *See, e.g.*, *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (stating "[s]ummary reference to a single, five-headed 'Defendants'" does not support a reasonable inference that each Defendant is liable for retaliation" (citation omitted)). No matter how unlikely it is that Defendants spoke effectively in unison, as Plaintiff suggests, it may be that the Defendants acted together to convey the message that refusing to participate in the interview or filing additional grievances would have dire consequences.

[6] Under the MDOC disciplinary regime, "Out of Place" is a Class II misconduct. MDOC Policy Directive 03.03.105 Prisoner Discipline, Attachment B (eff. October 25, 2021). The offense is described as follows:

Being within the lawful boundaries of confinement and not attempting to escape, but in a location without the proper authorization to be there; absent from where one is required to be; being outside assigned housing unit without prisoner identification card; being absent from required location during count.

*Id*.

returning to his "Housing Unit" without staff authorization. Prisoner Miles Identified by OMNI and Otis.

(Compl., ECF No. 1, PageID.9 (quotation marks added by Plaintiff in his recitation of the misconduct report)); Misconduct Report, ECF No 1-1, PageID.21.) Plaintiff indicates that he was "not on an Itenerary [sic] call out," he was on a handwritten pass. (Compl., ECF No. 1, PageID.9–10.) For that reason, Plaintiff contends that the misconduct was false.[7] He challenged Tillitson. Tillitson responded with threats. Tillitson told Plaintiff that if he did not waive 24-hour notice and plead guilty or allow Tillotson to hold a hearing and give Plaintiff maximum sanctions, "Plaintiff would regret it." (*Id.*, PageID.10.) Plaintiff responded: "[T]here was nothing more they could do to him than the judge who gave him Life Without Parole and that he feared nothing except God and that he will never bow down and [accept] mistreatment or being bullied and that they will never break his will." (*Id.*)

Although the significance of the distinction between the handwritten pass and an itinerary callout is not clear to the Court, it was apparently clear to the hearing officer. Plaintiff was found not guilty of the misconduct. (*Id.*)

## B.    Retaliation Analysis

### 1.    Protected Conduct

Considering Plaintiff's allegations against the *Thaddeus-X* elements, at this stage of the proceedings, it appears that Plaintiff engaged in protected conduct. Although the underlying

---

[7] Plaintiff indicates that the same falsehood eventually appeared in the grievance investigation summary authored by Quainton and McLair. They reported that Plaintiff was on call out to Control Center. (Compl., ECF No. 1, PageID.10; Grievance Response, ECF No. 1-1, PageID.20.)

grievance was plainly frivolous and Plaintiff's failure to participate in its resolution was undoubtedly frustrating, that is apparently his right under the MDOC grievance policy.[8]

"[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In the context of prison, of course, the right to speak or not speak is necessarily constrained. The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). Thus, an inmate "retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The Second Circuit Court of Appeals, in *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018), considered whether declining to speak could be protected conduct for a prisoner. The *Burns* panel concluded that refusing to provide false information and refusing to serve as a snitch on an ongoing basis were not inconsistent with the plaintiff's status as a prisoner and, accordingly, were protected by the First Amendment. *Id*. at 88–93. *But see Dixon v. Gonzales*, No. 1:09-cv-172, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) ("To the extent Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to 'snitch'), that claim also fails."). Here, where the MDOC provides the prisoner the opportunity to ***not*** participate in a grievance interview, it would seem anomalous to say that so choosing would be "inconsistent with his status as a

---

[8] It is also possible that Plaintiff's refusal to waive notice with respect to the misconduct or plead guilty and accept the maximum sanction was also protected conduct. But, as noted below, the only action motivated by that protected conduct was a vague threat that is not sufficient to support a First Amendment retaliation claim. *See* III B 2, *supra*.

prisoner." Accordingly, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's decision to not participate in the grievance interview was protected conduct.

### 2.  Adverse Action

Moreover, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, the Court concludes that Plaintiff has sufficiently alleged adverse action in the form of the threats to file false misconducts and the filing of the "false" misconduct. The prospect of the sanctions that follow from a finding of guilt on even a minor "Out of Place" misconduct—confinement to quarters for up to five days, loss of privileges for up to 30 days, and extra duty for up to 40 hours[9]—are deemed sufficiently adverse to deter protected conduct. *See Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *see also Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation.").

Beyond the prospect of those sanctions, Plaintiff's allegations of adverse action fall short. Almost all of the "adverse actions" of which Plaintiff complains are little more than vague threats. Defendants Quainton, McLair, and Tillitson threatened to "make Plaintiff's life at LCF Miserable and Difficult," jeopardize Plaintiff's ability "to stay at LCF and survive," make "the remaining years of his incarceration at LCF . . . a heartache and miserable," and that "Plaintiff would regret it." (Compl., ECF No. 1, PageID.9–10.) The Court concludes that such vague statements would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged

---

[9] *See* MDOC Policy Directive 03.03.105, Prisoner Discipline, Attachment D (eff. Apr. 18, 2022).

threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (holding that Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[—to 'get' a prisoner who files a grievance on Krause and 'steps out of line'—] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action.").

Accordingly, the Court concludes that Plaintiff has alleged adverse action sufficient to support a First Amendment retaliation claim in the form of threats to file false misconducts and then the alleged filing of a false misconduct. All other "adverse actions" suggested by Plaintiff's allegations are not severe enough to deter protected conduct and cannot support a First Amendment retaliation claim.

### 3.     Retaliatory Motive

Finally, based on Plaintiff's description of Defendants' statements, Defendants Quainton, McLair, and Tillitson identified Plaintiff's protected conduct as the motivating force behind their threat to file false misconducts and their actual filing of a false misconduct. Accordingly, the Court concludes that the First Amendment retaliation claim against Defendant Quainton, McLair, and

Tillitson stated in paragraphs 20 through 33 of the complaint may not be dismissed on initial review.

### IV.     Malicious Prosecution and Substantive Due Process Claims Against Defendants Ahmed, McLair, Quainton, and Tillotson

Plaintiff contends that all of the Defendants egregiously abused their governmental authority in pursuing the false "out of place" misconduct. The Court rejects that contention at the outset because Plaintiff has not alleged any facts that support an inference that either Defendant McLair or Defendant Ahmed played any role in the writing or prosecution of the misconduct report. Plaintiff's malicious prosecution allegations against those two defendants fail to state a claim. Plaintiff's malicious prosecution claims against Defendants Quainton and Tillitson fare no better, but they fail for different reasons.

The term "malicious prosecution" is used in different contexts. The State of Michigan recognizes a tort by that name:

> In order to state a prima facie case of malicious prosecution, the plaintiff must prove: (1) prior proceedings terminated in favor of the present plaintiff, (2) absence of probable cause for those proceedings, (3) malice, and (4) a special injury that flows directly from the prior proceedings.

*Scott v. Dep't of Corr.*, No. 219726, 2000 WL 33419366, at *1 (Mich. Ct. App. May 30, 2000). But it is not certain that such a claim "can be predicated on a prison disciplinary hearing . . . ." *Id.*

Even if a prison disciplinary proceeding is properly the subject of a malicious prosecution state-law tort, Plaintiff has failed to allege "a special injury that flows directly from the prior proceedings." In *Friedman v. Dozorc*, 312 N.W.2d 585 (Mich. 1981), the Michigan Supreme Court held that an action for malicious prosecution of civil proceedings may not be maintained "in the absence of special injury." *Id.* at 599. The Michigan Court of Appeals described the nature of a special injury as follows:

> A "special injury" is an "injury to one's fame (as by a scandalous allegation), injury to one's person or liberty, and injury to one's property." It must be an injury that would not necessarily occur in all lawsuits alleging similar causes of action.

*Silver Capital Group, LLC v. Underwood*, No. 355037, 2022 WL 815365, at *5 (Mich. Ct. App. Mar. 17, 2022) (citations omitted). Plaintiff has alleged no injury "of an unusual nature" that would not "normally flow[] from the maintenance of similar actions." *Barnard v. Hartman*, 344 N.W.2d 53, 54–55 (Mich. Ct. App. 1983). Accordingly, Plaintiff has failed to state a claim for malicious prosecution under state law.

In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit recognized the existence of a claim of malicious prosecution arising under the Fourth Amendment, which is cognizable in an action under § 1983. *Id.* at 308 (citing *Wallace v. Kato*, 549 U.S. 384, 390 n.2 (2007)). The *Sykes* court held that, to succeed on a malicious prosecution claim, a plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308–09; *see also Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015); *Gregory v. City of Louisville*, 444 F.3d 725, 727 (6th Cir. 2006). Plaintiff's allegations fail to state the type of "malicious prosecution" claim contemplated by *Sykes* because the proceedings against him were not a "criminal prosecution." That shortcoming is echoed in Plaintiff's failure to show the third *Sykes* element, a deprivation of liberty. A determination of guilt for a Class II misconduct violation proceedings does not implicate any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

15

Under Michigan Department of Corrections Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See id.* ¶ DDDD, Attachment D. A determination that Plaintiff was guilty of a Class II misconduct could not result in the denial of good time or disciplinary credits. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, has failed to show the deprivation of a liberty interest to support his malicious prosecution claim.

Perhaps as an alternative to a *Sykes*-type Fourth Amendment based malicious prosecution claim, Plaintiff describes the actions of Quainton and Tillitson in pursuing the Class II misconduct charge as an egregious abuse of governmental authority. That is language used to describe a substantive due process violation. *See, e.g.*, *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999) (explaining that "[a]buse of authority is not a constitutional violation unless the behavior 'shocks the conscience' or is an 'egregious abuse of governmental power'" (quoting *Cnty of Sacramento v. Lewis,* 523 U.S. 833 (1988)); *Thaddeus-X*, 175 F.3d at 387–88). Plaintiff specifically mentions substantive due process as a basis for recovery in the prefatory paragraph to his factual allegations. (Compl., ECF No. 1, PageID.6.)

In *Thaddeus-X*, the Sixth Circuit Court of Appeals explained that, under *Graham v. Connor*, 490 U.S. 386 (1989) and *Albright v. Oliver*, 510 U.S. 266 (1994), "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Thaddeus-X*, 175 F.3d at 387 (internal quotation marks omitted) (quoting *Albright*, 510 U.S. at 273). The *Thaddeus-X* court held that "[t]o the extent that our prior decisions have imposed the 'shocks the conscience' test when prisoners claim retaliation of an enumerated constitutional right, they are in conflict with the Supreme Court's decision in *Graham* and its progeny and are no longer the law of this Circuit." *Id.* at 388 (footnote omitted). Based on *Thaddeus-X*, this Court concludes that Plaintiff does not have a substantive due process claim in addition to his First Amendment retaliation claim based on Quainton and Tillitson's alleged pursuit of a false misconduct claim against Plaintiff.[10]

For all of these reasons, the Court concludes that Plaintiff has failed to state an actionable "malicious prosecution" claim and he has failed to state a "substantive due process" claim.

**V.     Plaintiff's Claims Under §§ 1985 and 1986**

Plaintiff also makes passing reference to claims under 42 U.S.C. §§ 1985 and 1986. He cites the statutory sections twice in the first two paragraphs of the complaint. They are not mentioned after those initial references.

---

[10] In *Howard v. Livingston Cnty., Mich.*, No. 21-1689, 2023 WL 334894, at *12–13 (6th Cir. Jan. 20, 2023), the Sixth Circuit suggested that in other contexts, such as public employment, and in exceptional circumstances, it may be that the retaliatory adverse action is so conscience-shocking independent of the First Amendment retaliatory effect that a substantive due process claim might survive. The Court concludes that Plaintiff's allegations do not support an inference that such exceptional circumstances are present in this case.

Section 1985 provides:

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United

States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985. There are no allegations in Plaintiff's complaint that would support a claim that any defendant: (1) conspired to prevent an officer of the United States from performing his duty; (2) conspired to intimidate a participant in a proceeding in a court of the United States or conspired to interfere with due process in state courts with the intent to deprive persons of their equal protection rights; or (3) conspired to deprive any person of the equal protection of the laws. Plaintiff fails to state a claim under 42 U.S.C. § 1985 and his invocation of the statutory section is frivolous.

"Section 1986 is designed to punish those who aid and abet violations of § 1985." *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc*., 32 F.3d 989, 994 (6th Cir. 1994) (quoting *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980)). If a court finds no violation of § 1985, there can be no violation of § 1986. *Id*. Accordingly, Plaintiff has failed to state a claim for violation of § 1986. Plaintiff's § 1986 claim is frivolous as well.

## VI.  Michigan Constitutional Claims Against Defendants Ahmed, McLair, Quainton, and Tillotson

In paragraph 39 of the complaint Plaintiff asserts that Defendants have violated his right to "FAIR and JUST TREATMENT" under the Michigan Constitution. (Compl., ECF No. 1, PageID.11.) Plaintiff refers the Court to the Article I, § 17 of the Michigan Constitution of 1963, which provides:

No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

Mich. Const. Art. I, § 17. Plaintiff insists that he is seeking relief for violation of the state constitution's due process clause and the state constitution's fair and just treatment clause. (Compl., ECF No. 1, PageID.6.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated the state constitution, therefore, fails to state a claim under § 1983.

Moreover, this Court has concluded that claims for state constitutional violations, such as the claims raised by Plaintiff here, are properly dismissed:

> Gamrat correctly notes that the Court did not consider a claim that the House Defendants violated her right to fair and just treatment as guaranteed in Article 1, § 17 of the Michigan Constitution. Gamrat quoted that provision in paragraph 145 of her First Amended Complaint in Count I, which alleged, "Violation of Procedural Due Process under State and Federal Constitutions–42 U.S.C. § 1983." (ECF No. 20 at PageID.130.) In their opening brief, the House Defendants set forth in footnote 8 their understanding that Gamrat "has raised only a due process claim." (ECF No. 24 at PageID.263 n.8.) Although Gamrat quoted the "Fair and Just Treatment" clause of Article I, § 17 of the Michigan Constitution in her response (ECF No. 32 at PageID.387), she did not correct the House Defendants' understanding of her claim, nor did she discuss, let alone mention, *Jo-Dan Ltd. v. Detroit Board of Education*, No. 201406, 2000 WL 33416896 (Mich. Ct. App. July 14, 2000)—the case she now describes as "[t]he seminal case in Michigan regarding the Fair and Just Treatment Clause." (ECF No. 71 at PageID.1389.) Regardless, the Court would have dismissed the claim even if Gamrat had raised it. The Michigan Supreme Court has recognized a damages remedy under the Michigan Constitution only in limited circumstances—against the State of Michigan and its officials in their official capacities. *See Smith v. Dep't of Pub. Health*, 428 Mich. 540, 410 N.W.2d 749 (1987), *aff'd sub nom Will v. Mich. Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304 (1989). Any such claim in this case would face two problems. First, Gamrat sued the House Defendants only in their individual capacities—a point she emphasized in her response to the House Defendants' motion. Second, even if she had alleged such claim against the State of Michigan and the House Defendants in their official capacities, it would have been barred in this Court by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355–56 (1974). Accordingly, Gamrat has not demonstrated a palpable error.

*Gamrat v. Allard*, No. 1:16-cv-1094, 2018 WL 9944992, at *2 (W.D. Mich. Apr. 24, 2018), *aff'd sub nom Gamrat v. McBroom*, 822 F. App'x 331 (6th Cir. 2020), *cert. denied sub nom*, *Bauer v. McBroom*, 141 S. Ct. 1700 (2021). This Court's reasoning in *Gamrat* compels the same result here. Accordingly, the Court will dismiss Plaintiff's claims for violation of the Michigan Constitution against Defendants Ahmed, McLair, Quainton, and Tillotson.

**VII.   Surety Defendants**

Plaintiff dedicates a significant portion of his complaint to allegations against the Surety Defendants. (Compl., ECF No. 1, PageID.11–15.) Based on state court rules and statutes, Plaintiff contends that the individual defendants have some sort of "dishonesty" coverage in the form of bonds apparently underwritten by the Surety Defendants. It appears to the Court that Plaintiff misreads the statutes upon which he bases the conclusion that such coverage exists, but for purposes of this preliminary review, the Court will accept as true Plaintiff's allegation that such bonds exist.

Plaintiff's novel allegations are difficult to follow, read more like legal argument than factual allegations, and at some point tend towards the jargon usually employed by tax protesters.[11]

---

[11] Plaintiff alleges:

> By right of Plaintiff, status as a Private American National Citizen of the United States/Mennonite, he in fact has the "Secured" and clear "TITLE" to file said Common Law Lien in this Cause since this is a[n] "EQUITABLE LIEN" based upon Constitutional Equit as stated herein. In that, "equitable liens" by their very nature constitutes a "Substitution" or type of "COMPENSATORY RELIEF,["] rather than a specific form of relief in the actual equitable claim itself, and since this action, in and of itself, has a clear commercial "value" as "Arguable" claims are . . . settled, bought, and sold" . . . as stated in Bell v. Johnson, 308 F.3d 594, 603–609 (6th Cir. 2002), with clear commercial application, the debt against the defendants herein claimed may be Reduced in value, sold, traded, assigned, and/or

To the extent Plaintiff's arguments are reminiscent of the "legalistic gibberish" offered by tax protesters challenging the constitutionality of the federal income tax, *Crain v. Comm'r*, 737 F.2d 1417, 1418 (5th Cir. 1984), the Court will not address them. This Court has quoted with approval the *Crain* court's determination that there is "no need to refute these arguments with somber reasoning and copious citation of precedent [because] to do so might suggest that these arguments have some colorable merit." *Clanton v. Sam's Club*, No. 1:21-cv-53, 2021 WL 3021917, at *3 (W.D. Mich. July 6, 2021), *report and recommendation adopted*, 2021 WL 3021916 (Jul. 16, 2021), *aff'd*, 2022 WL 18781403 (6th Cir. Apr. 22, 2022). Plaintiff's other claims against the Surety Defendants are addressed below.

### A.    Federal Claims

Plaintiff may not maintain a § 1983 action against the Michigan Department of Insurance and Financial Services or the Michigan Department of Technology, Management and Budget. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly

---

turned over to a collection agency upon defendants failure to privately settle and/or pay the full amount due.

(Compl, ECF No. 1, PageID.14, ¶ 53 (ellipses in original).) Plaintiff's description of himself as a "Private American National Citizen" is characteristic of "sovereign citizen" arguments against taxation. *See, e.g.*, *United States v. Hansen*, 929 F.3d 1238, 1245 (11th Cir. 2019); *Mallory v. Sessions*, No. 2:17-cv-12021, at *2 (E.D. Mich. June 11, 2018). Plaintiff's reliance on the language of the Uniform Commercial Code in subsequent paragraphs is also typical of the sovereign citizen movement. *See Torres v. Fla. Dep't of Corr.*, 742 F. App'x 403, 404, 406–408 (11th Cir. 2018); *Muhammad v. Mich. Dep't of Corr.*, No. 1:17-cv-68, 2017 WL 743943, at *1 (W.D. Mich. Feb. 27, 2017).

abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that state departments such as the MDOC are absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through state departments) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses any intended § 1983 claims against the state department defendants.

NUFIC is a private insurance company. Section 1983 creates a private cause of action for deprivation of federally guaranteed rights by a person acting under color of state law. In order to act under color of state law, a defendant in a § 1983 action must have exercised the power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). To qualify as state action, the defendant's conduct must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937. Plaintiff's complaint contains no factual allegation that would remotely suggest that NUFIC acted under color of state law if it acted as a surety on a bond related to the individual defendants' employment. Therefore, Plaintiff fails to state any plausible federal claim against Defendant NUFIC.

## B.  State-Law Claims

Plaintiff alleges that each individual defendant has an "Employment Bond," and he sues the Surety Defendans to impose an equitable lien against those bonds. Such claims are state-law

claims. Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims against the Surety Defendants, the Court declines to exercise jurisdiction.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, all of Plaintiff's federal claims against the Surety Defendants will be dismissed. Under the circumstances presented, the balance of the relevant considerations weighs against the exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims against Surety Defendants will be dismissed without prejudice.

## VIII.   Official Capacity Claims Against Remaining Defendants Quainton, McLair, and Tillitson

Plaintiff sues the individual defendants in their respective personal and official capacities. (Compl., ECF No. 1, PageID.2.) As noted above, Plaintiff may not maintain a § 1983 action against a department of the State of Michigan, such as the MDOC. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Therefore, the Court dismisses Plaintiff's official capacity claims for monetary relief against Defendants Quainton, McLair, and Tillitson.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id*. Importantly, however, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff seeks several specific injunctive orders from this Court. (Compl., ECF No. 1, PageID.15, ¶¶ A–D.) None of the requests for relief, however, address an ongoing violation of federal law. Accordingly, Plaintiff's official capacity claims for injunctive relief against Defendants Quainton, McLair, and Tillitson will be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendant Ahmed will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's § 1985 claims, § 1986 claims, malicious prosecution claims, substantive due process claims, claims for violations of Article I, § 17 of the Michigan Constitution, and all official capacity claims against Defendants Quainton, McLair, and Tillitson. Additionally, the Court will dismiss, for failure to state a claim, all of Plaintiff's First Amendment retaliation claims under § 1983 against Defendants Quainton, McLair, and Tillitson *except for* Plaintiff's First Amendment retaliation claim for damages against Defendants Quainton, McLair, and Tillitson in their personal capacities, as set forth in paragraphs 20–33 of the complaint based on the protected conduct of refusing to participate in the grievance interview and the adverse actions of threatening to file and then filing an allegedly false misconduct. Further, the Court will dismiss, for failure to state a claim, any intended claims under 42 U.S.C. § 1983 against Defendant NUFIC, Defendant Michigan Department of Insurance and Financial Services, and Defendant Michigan Department of Technology, Management, and Budget. The Court will dismiss without prejudice Plaintiff's state law claims against Defendant NUFIC, Defendant Michigan Insurance

26

and Financial Services, and Defendant Michigan Department of Technology, Management, and Budget because the Court declines to exercise supplemental jurisdiction over those claims.

Plaintiff's First Amendment retaliation claims for damages against Defendants Quainton, McLair, and Tillitson in their respective personal capacities, as set forth in paragraphs 20–33 based on the protected conduct of refusing to participate in the grievance interview and the adverse actions of threatening to file and then filing an allegedly false misconduct, remain in the case.

An order consistent with this opinion will be entered.


Dated:   April 1, 2024                                  /s/ Jane M. Beckering
                                                        Jane M. Beckering
                                                        United States District Judge